STONECYPHER *v.* COLEMAN *et al.*

1 Where an intestate died in possession of two tracts of land under bonds for title, with part of the purchase-money paid, he had a beneficial interest or equitable estate therein which descended to his heirs; and where under an arrangement between his administrator and his widow the latter agreed to pay off the balance of the purchase-money and take

---

Descent and Distribution 18 C. J. pp. 814, n. 74; 900, n. 94; 901, n. 26 New; 909, n. 38 New.
Dismissal and Nonsuit 18 C. J. p. 1188, n. 66.
Executors and Administrators 23 C. J. p. 1145, n. 64.
Limitation of Actions 37 C. J. pp. 795, n. 42; 1019, n. 36; 1208, n. 82, 83.
Trusts 39 Cyc. pp. 172, n. 32; 191, n. 99.
Vendor and Purchaser 39 Cyc. p. 1612, n. 98.

title to these lands in her name, all of which was done, and, when she had received from the rents of the lands an amount sufficient to repay her the money advanced in discharging such purchase-money with interest, then she was to convey these lands to the heirs at law of the intestate, who consisted of herself and six minor children, if there were no other debts of intestate unpaid, and in the event there were debts then she was to convey the lands to the estate for the purpose of administration, these lands were impressed with an implied trust in favor of such minor children.

(*a*) Where the widow improperly sold one of said tracts, and wrongfully encumbered the other tract after she had been repaid from the rents the money, with interest, advanced by her to discharge the balance of the purchase-money due by the intestate on these lands, and where no debts of the intestate remained unpaid, she became liable under this implied trust to her coheirs for the value of their interests in the tract so sold, and, if she should permit the other tract to be sold under the encumbrance, she would also become liable to her coheirs for the value of their interests in this tract, and she would likewise be liable to them for their interests in any excess of the rents received by her after the payment of the money so advanced by her with interest. If she should pay off the encumbrance upon the unsold tract, then the plaintiffs would be entitled to a decree declaring that she held four sevenths interests in said tract in trust for them.

2. Actions to enforce implied or constructive trusts must generally be brought in seven years from the time such actions accrue.

(*a*) The statute of limitations does not run against minor beneficiaries under such a trust; and they have the same time, after coming of age, to bring an action as is prescribed in the Code for other persons.

(*b*) It not affirmatively appearing that the plaintiffs' cause of action was barred, the court did not err in overruling the ground of the defendant's demurrer seeking to set up such defense.

3. The cause of action set out in the petition was not one in favor of the administrator, but one in favor of the plaintiffs, which they could enforce in their own names.

4. The court did not err in allowing the amendment to the petition over the objections urged thereto by the defendant, the amendment being germane to the cause of action set out in the petition.

5. The court did not err in overruling the motion of the defendant to dismiss the petition as amended, the grounds of this motion being the same as the grounds of her demurrer.

No. 5016. DECEMBER 17, 1925.

Equitable petition. Before Judge Camp. Laurens superior court. June 20, 1925.

Thomas Coleman, David Coleman, Lizzie Coleman Roach, and Bessie Lee Coleman Hobbs filed their petition against Georgia J. Stonecypher, and made these allegations: Petitioners are the heirs at law of Henry Coleman, and as such are the owners of four sevenths undivided interests in two described tracts of land. Their

father, Henry Coleman, at the time of his death, was in possession of said lands under bonds for title, the first-described tract having been sold to him by B. T. Burch, and the last-mentioned tract having been sold to him by C. H. Peacock. At the date of his death said lands were reasonably worth $9,500. Their father owed $2,500 as a balance of the purchase-price of said lands, leaving an equity in said lands, belonging to petitioners, their mother, the defendant, and two other minor sisters, namely, Pauline and Alhfold Coleman, as heirs at law of said Henry Coleman. Petitioners were minor children of Henry Coleman and Georgia Stonecypher at the time of the death of Henry Coleman in 1910, and were living with their mother, and owned said lands as tenants in common and as heirs at law. On March 4, 1913, and after the appointment of W. D. Coleman as administrator of the estate of Henry Coleman, and after the remaining purchase-money on said lands became due, the defendant agreed with said administrator, and with the holders of the purchase-money notes, that she would take up the remaining notes due on said lands, take the deeds in her own name, and hold the lands until the rents and profits had paid her said amounts, and then would make deeds over to the estate of Henry Coleman, to be divided among petitioners and the other heirs of said estate. Under this agreement the defendant procured deeds to be executed by Burch to the first-described tract, and from C. H. Peacock to the second-described tract. She then encumbered said tracts of land in a security deed to the Volunteer State Life Insurance Company, with other lands, and secured a loan from said insurance company for the sum of $3,000 out of which petitioners are advised and believe she paid off the purchase-money notes due Burch and Peacock. This security deed was recorded on April 1, 1913. Petitioners remained with their mother in possession of said land, but she used the entire rents and profits arising therefrom, to repay her the amounts expended in the payment of said purchase-money notes, with the interest due thereon. On said tracts of land, containing 303-1/4 acres, there are at least eight open, cleared farms, with suitable improvements, and said lands, between March 4, 1913, and September, 1915, were reasonably worth for rents the sum of $2,400; and after paying all interest at the rate of eight per cent., petitioners are advised and believe that said defendant received the sum of $1,800.00 to

be applied to the principal and interest advanced by her as aforesaid.

On September 18, 1915, without any authority, and in total disregard of petitioners' interest in said lands, the defendant sold to one Graham 101-1/4 acres of the second described tract; and while said lands were reasonably worth $2,500, the recorded deed to the said Graham shows a consideration of $1,881.56. Thereby the defendant wrongfully disposed of a part of the lands belonging to the said estate and to petitioners as heirs at law of Henry Coleman, and placed it beyond her power to comply with her agreement to hold said lands until the rents and profits were sufficient to pay off said indebtedness with interest, and turn the lands unencumbered over to the estate to be divided between petitioners and the other heirs. Up to September 18, 1915, the defendant received as rents and profits and by the sale of said part of lands the sum of $3,681.56 which left an amount equal to $1,-181.57 above all principal and interest due on said purchase-money under said bonds for title, thus leaving the first-described tract free and unencumbered and belonging to the heirs of said estate, with an excess of profits amounting to the last-named sum. Said land at said time was worth $7,500, besides the accumulated profits here set out. Instead of turning over said lands for division, as she had agreed to do at the time of taking said deed, the defendant continued to hold said lands, rent the same, and receive all the profits arising therefrom. The first of said described tracts has a five-horse farm in cultivation, and the defendant has never received rents therefrom less upon the average than $500 per annum. She has received rents since 1915 amounting to $4,500, and has not only refused to return said lands to the estate of the intestate, but has failed and refused to account to petitioners and the other heirs for any of said profits. Said profits, added to the value of said land, amount to $13,181, and the interest of petitioners therein, with the land unencumbered, would now be $7,532. The defendant, in order to defeat the rights of petitioners in said real estate, and for the purpose of defrauding them out of said lands and the profits thereof, on December 14, 1919, procured a loan of $3,500 on said land from the John Hancock Life Insurance Company, without the knowledge of petitioners, and then executed a deed to said company to secure said loan,

without any right to do so, and while she as an heir at law of said intestate had only a one seventh undivided interest in said land. This she did without accounting to petitioners for any part of the proceeds of said loan. Said loan is now due, together with two years' interest and the taxes for two years, making the encumbrance against said land amount to nearly $4,000. The defendant has permitted said loan to mature and said interest and taxes to accumulate against said property fraudulently, with intent to permit said land to be sold to pay said loan and other encumbrances, in order to defeat petitioners' rights and title therein. She is threatening to allow said lands to be sold therefor. She is amply able to pay off said loan, and has not only sufficient funds in her hands arising from the rents of said land, but has several hundred acres of improved farm lands, besides personal property. She owns lots Nos. 5 and 6 in the sixteenth land district of said county, containing 202-1/2 acres each. She owns 43 acres, more or less, in lot No. 25 of said district. She is now threatening to sell and convert into cash her property, and leave the State, permitting the land so encumbered to sell for the debts against it. She is seeking to render herself insolvent, in order to defeat petitioners' rights in said property and to defraud them.

If she is permitted to carry out her present plan, she will sell, give away, and dispose of all of her visible property, and then permit the lands belonging to said estate to sell under the fraudulent encumbrances she has placed thereon. If she is permitted to carry out her scheme, there will be no way of enforcing a judgment that may be rendered against her for petitioners. The four sevenths interests of petitioners in said land are worth $4,285.66, free of all encumbrances. The four sevenths interests of petitioners in the rents of said lands since 1915, above all indebtedness to defendant, are $3,246.32. In the event said lands are lost under said encumbrances in favor of John Hancock Life Insurance Company, and the taxes, petitioners will be entitled to a judgment against the defendant in the sum of $7,532, besides interest, for their said four sevenths undivided interests in said lands and rents. If the defendant should pay said indebtedness, then petitioners would be entitled to a judgment in said land for four sevenths undivided interests as the heirs at law of said intestate, and a judgment for $3,246.32 as their part of the rents

for said land. Petitioners were minor children of the defendant and Henry Coleman at the date of the death of the latter. Since coming of age, they have been excluded from the joint possession of said property by the defendant. They pray that the defendant be enjoined from selling or giving away, mortgaging, or in any way encumbering any of her property, and especially the lands above described, that petitioners recover judgment against the defendant for the full value of the lands described in this petition in the sum of $4,285.36, in the event said land is permitted by the defendant to sell under said encumbrance thereon, that said judgment be made a special lien against the other property of the defendant above described, and a general lien against all her property, and that they recover the sum of $3,246.32 for their interest in the rents and profits of said land; that, in the event the defendant pays off the encumbrance now on said land, petitioners have judgment for four sevenths undivided interests in said lands as heirs at law of the said Henry Coleman, and that they have judgment against the defendant for said rents and profits. There is a prayer for general relief.

The defendant demurred to said petition on the grounds, (1) that no cause of action is set forth, and (2) that the action is barred by the statute of limitations; and specially because it is not alleged that the contract between the defendant and the administrator was in writing.

By an amendment the petitioners alleged that on March 4, 1913, W. B. Coleman as administrator of the estate of Henry Coleman agreed with the defendant for the latter to take over the lands of the intestate described in their petition, pay the remainder of the purchase-money thereon, and hold said lands until the rents should repay her the money advanced to pay the balance of the purchase-money and interest, and that as soon as she was so repaid she was to make a deed to petitioners and the other heirs at law as tenants in common of said lands, provided there were no debts then owing by said estate, but in that event the defendant was to make said title over to the estate for the purpose of administration and for the payment of said debts. The title was thus placed in the defendant for the reason that she was then the only heir of said estate of age and able to secure a loan on said land, as she later did, for the purpose of raising in that manner the purchase-money

then due to Burch and Peacock. It was agreed that said land was to become the joint property of the defendant and the other heirs, as soon as said money could be worked out of the rents and profits of said land by the defendant, unless at that time there remained debts due by the estate necessary to be paid out of the proceeds of said land, in which event the lands were to be deeded by the defendant back to the estate for the purpose of administration. There remained no debts due by the estate at the time, and it was never necessary for said land to be administered for the payment of any debts of the estate. When the rents and profits repaid the defendant the amount she had borrowed on said lands and used in the payment of the balance of the purchase-money, said property under said agreement became the absolute property of petitioners and defendant as tenants in common. It is not necessary for the administrator to be made a party to this suit, and he refuses to join herein.

To the allowance of this amendment the defendant objected on the grounds, (1) that there was nothing to amend by, (2) that it set up a new cause of action, and (3) that the cause of action was in the administrator. The court overruled the objections and allowed the amendment. The defendant then moved to dismiss the petition as amended, upon the same grounds as set out in her general demurrer. The court overruled the motion to dismiss and the general demurrer. To these rulings the defendant excepted.

*Hightower & New* and *Hardwick & Adams*, for plaintiff in error.

*George B. Davis*, contra.

HINES, J. (After stating the foregoing facts.)

1. When the father of the plaintiffs died intestate, holding possession of lands under bonds for title with a part of the purchase-money paid, he had a beneficial interest or equitable estate therein. *Dunson* v. *Lewis*, 156 *Ga.* 692 (119 S. E. 846) ; *Gholston* v. *Northeastern Banking Co.*, 158 *Ga.* 291 (123 S. E. 111, 35 A. L. R. 23). Upon his death this interest or estate descended to his heirs at law. Civil Code (1910), § 3929; *Eagan* v. *Conway*, 115 *Ga.* 130 (41 S. E. 493). This interest or estate of the intestate in these lands was of much greater value than the balance of the purchase-money due by him thereon. When the defendant acquired from the vendors of the intestate the legal title to these

lands, under the agreement and arrangement entered into between her and the administrator, by which she was to pay the balance of purchase-money due thereon by the intestate, and was to receive the rents and profits from these lands until she was repaid the money advanced by her in paying the balance due on the purchase-money thereof, when she was to convey the lands to the heirs at law of the intestate, if no debts were then due by the estate, there was impressed upon the lands in her hands an implied trust in favor of the children of the intestate, including the plaintiffs. This implied trust arose, not by reason of the said agreement between her and said administrator, but by reason of the fact that, when she acquired the legal title to these lands under such arrangement, there was a beneficial interest or estate in the heirs of the intestate therein. She thus became an implied trustee of the heirs. She held the title to such lands as such trustee. An implied trust arises "whenever the legal title is in one person, but the beneficial interest, either from the payment of the purchase-money or other circumstances, is either wholly or partially in another." Civil Code (1910), § 3739; *Jenkins* v. *Lane*, 154 *Ga.* 454, 477 (115 S. E. 126). In the circumstances the defendant held the legal title to these lands, but the beneficial interest at the inception of this arrangement was partially in the heirs of the intestate, including the plaintiffs. When she received a sufficient amount from the rents of these lands to repay her for the money expended by her in paying the balance of the purchase-money due thereon by her intestate, with interest, the whole beneficial interest in these lands vested in the heirs, and said lands then became their property, and she could as such trustee be compelled in equity to convey these lands to the heirs at law of the intestate.

If she improperly sold one tract and wrongfully encumbered the other tract, and permitted the latter land to be sold under such encumbrance, after she had been repaid from the rents the money advanced by her to discharge the balance of the purchase-money due on these lands by the intestate, she would be liable under this implied trust to her coheirs at law for the value of their interests in these lands and in any excess of profits received by her after the payment of the money so advanced by her, with interest thereon. If she should pay off the encumbrance upon the unsold tract,

then the plaintiffs would be entitled to a decree declaring that she held four sevenths interests in said tract in trust for them. If she should permit said tract to be sold under the incumbrance placed thereon by her, then she would be liable to account to the plaintiffs for their four sevenths undivided interests therein; and would likewise be liable to account to them for their four sevenths interests in any excess of profits received by her over and above the money, with interest, used by her in paying off the balance of the purchase-money due on these lands by the intestate. Treated as a petition to enforce an implied trust and to recover damages for its breach by the implied trustee, the petition set forth a cause of action; and the trial judge did not err in overruling the demurrer on the ground that it set forth no cause of action.

2. It is insisted that the plaintiffs' cause of action is barred by the statute of limitations. Their petition was filed on October 4, 1924. The plaintiffs allege in their petition that up to September 18, 1915, the defendant had received from rents and profits from these lands a sum of money more than sufficient to discharge the amount of money paid by her upon the balance of purchase-money due by the intestate on these lands, with interest. On that date she sold one of these tracts of land for $1,881.56. It clearly appears that on said date the defendant had received from rents, and from this sale, a much larger sum of money than was necessary to repay her the amount she advanced in discharging the purchase-money due by the intestate on these lands, with interest. When the defendant was thus fully reimbursed for her money so expended, the title to the unsold tract of land vested in her and her children as tenants in common. The petition alleges that when plaintiffs became of age the defendant excluded them from the possession of this land. Actions to enforce implied or constructive trusts must generally be brought in seven years from the time such actions accrue. *Wallace* v. *Mize,* 153 *Ga.* 374 (112 S. E. 724). If the exclusion of the plaintiffs from this land by the defendant occurred more than seven years prior to the bringing of this proceeding, then their cause of action would be barred. But the date of their exclusion from the premises and the ages of the plaintiffs are not given. Besides, the statute of limitations does not run against minors; and they have the same time, after coming of age, to bring an action as is prescribed in the Code for

other persons. Civil Code (1910), § 4374. In the fifteenth paragraph of their petition the plaintiffs allege that they were minors at the time of the death of their father; and they then undertake to state their respective ages, by leaving blank spaces after their names for this purpose, but these blanks are left unfilled. So it does not affirmatively appear that the plaintiffs became of age more than seven years before the institution of this suit, or, if of age, that their expulsion from these lands had occurred more than seven years prior to the bringing of this suit. Being in a court of equity, it may be urged that if the plaintiffs be within an exception to the statute, it was incumbent upon them to state it in their petition. *Worthy* v. *Johnson,* 8 *Ga.* 236 (12) (52 Am. D. 399). But this court has held that the defense that a cause of action is barred can not be asserted by demurrer in an equitable proceeding, if it does not affirmatively appear upon the face of the petition that the cause of action is barred by the statute. *Powell* v. *McKinney,* 151 *Ga.* 803 (3) (108 S. E. 231); *Collins* v. *Henry,* 155 *Ga.* 886 (2) (118 S. E. 729). It not affirmatively appearing that the plaintiffs' cause was barred by the statute of limitations, the court did not err in overruling the demurrer to the petition seeking to set up such defense.

3. It is next insisted that the cause of action set out in the petition was one in favor of the administrator of the intestate, which can not be enforced by the plaintiffs. This contention is based upon the theory that the plaintiffs are undertaking to enforce a contract between the defendant and the administrator, by which the defendant acquired the title to these lands by paying the balance of the purchase-money due thereon by the intestate, and by which she agreed to convey these lands to the heirs at law of the intestate when she was repaid the amount she advanced, from the rents and profits thereof. If the plaintiffs were endeavoring to have this contract specifically performed by the defendant, or were suing her for damages growing out of its breach, this question would be for decision by this court; but we have undertaken to show in the first division of this opinion that the plaintiffs are not seeking to have this contract specifically performed by the defendant, nor are they seeking to recover damages from her for its breach. On the contrary, they are undertaking to enforce an implied trust against the defendant and to recover for its breach

by her. The plaintiffs allege the existence of this agreement by way of inducement, and to show that by reason of the existence of this contract in part, and the other facts stated, this land was impressed by an implied trust in their favor, which they are seeking to set up and enforce against the defendant and to recover from her for its breach. Clearly the action upon this implied trust was not one in favor of the administrator, but one in favor of the heirs at law of the intestate. Furthermore, as the contract between the administrator and the defendant was made for the benefit of the heirs of the intestate, it might well be held that they could sue on it in their own names. *Sheppard* v. *Bridges,* 137 *Ga.* 615, 621 (74 S. E. 245); *Carruth* v. *Ætna Life Insurance Co.,* 157 *Ga.* 608 (122 S. E. 226). But, as we have stated, this question is not for decision in this case, and we do not pass upon it.

4. The court did not err in allowing the amendment to the petition, over the objections of the defendant. The facts stated in this amendment were germane to the original petition, and the amendment was properly allowed.

5. It follows from what is set out above that the court did not err in overruling the motion of the defendant to dismiss the petition as amended. *Judgment affirmed. All the Justices concur.*